FRANCES SPEER, DEFENDANT IN ERROR. v. WEST JER-
SEY AND SEASHORE RAILROAD COMPANY. PLAINT-
IFF IN ERROR.

Submitted November Term, 1906—Decided February 25, 1907.

It is negligence in the conductor of a trolley car, which has come to a
stop at a street corner for the purpose of taking on passengers, to
start it until he has exercised due care to ascertain whether all
the persons there waiting to take it have safely boarded the car.

On error to the Atlantic Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON
and GARRETSON.

For the plaintiff in error, *Bourgeois & Sooy.*

For the defendant in error, *William I. Garrison.*

The opinion of the court was delivered by

GARRETSON, J.   This action is brought to recover com-
pensation for injuries received by the plaintiff while attempt-
ing to board a car of the defendant company at the corner of
Railroad and Rhode Island avenues, in Atlantic City.

The allegation of defendant's negligence is negligently
causing a trolley car which had stopped to start and be set
in motion while the plaintiff was in the act of boarding it.

The only errors assigned are upon the refusals of the trial
judge to nonsuit the plaintiff and to direct a verdict for the
defendant.

It appears from the testimony that the cars ran through
Railroad avenue and crossed Rhode Island avenue at right
angles;   that   the   plaintiff   approached   Railroad   avenue
through Rhode Island avenue, and she thus describes the
occurrence:   "I attempted to board the car and I waved my
hand and the motorman stopped, and then I tried to get on;

put my foot on the first step and was raising myself up to the platform, when he started the car and throwed me; the gentleman was there; I didn't know him; he left me get on first, like any gentleman would, and when I raised myself it throwed me hard to the ground."

A witness produced on the part of the plaintiff testifies: "I was on the right-hand side of the street, going down Rhode Island avenue, and I heard a car and started to run to catch the car, and as I got to the corner I looked back and saw the lady; she was on the left side and she came to the crossing; I stepped away to let her get on first; I did not notice what hand she used; just as she got one foot on the car started and she went off; as she fell I turned around and got hold of her hand and helped her up; the car stopped and she got on the car, and I got on the car." And on cross-examination, his testimony reads:

"*Q.* Did she come from the upper side of Rhode Island avenue to the lower side, along the car track?

"*A.* Yes, sir; right across the car track.

"*Q.* And you got to the car before she did?

"*A.* Yes, sir.

"*Q.* Where was the conductor?

"*A.* The conductor was on the rear of the car before he got to the crossing, and after he got there and saw me he stepped inside the car.

"*Q.* Did he see her?

"*A.* I don't know.

"*Q.* Was he in a position where he could see her?

"*A.* I don't know.

"*Q.* He saw you and stopped for you?

"*A.* Yes, sir.

"*Q.* After he thought you got on, what did he do?

"*A.* He rang the bell to start the car.

"*Q.* And what after that?

"*A.* He stopped it.

"*Q.* Did you get on?

"*A.* No, sir, not at first.

"*Q.* Where was the conductor standing?

"*A*. Right inside of the car.

"*Q*. How long would you think you waited before Mrs. Speer came up to get on the car?

"*A*. Just a short time; probably fifteen or twenty seconds.

"*Q*. In other words, you were running; you motioned for the car to stop and you went up and when you got there, what did you do—put your hand on the rail?

"*A*. Yes, sir.

"*Q*. On the front rail?

"*A*. Yes.

"*Q*. When you put your hand there to get on, you saw her coming to the car?

"*A*. On the other side of the street.

"*Q*. Then what did you do?

"*A*. I stepped off to let her get on first.

"*Q*. How did she fall?

"*A*. The best I can say, is as she stepped on the car the car started; as the car started, she got tangled up, somehow or other, and fell."

The conductor, sworn on the part of the defendant, testifies that he did not see Mrs. Speer fall from the car; did not see her attempt to board the car, and that she did not signal him so that she might get on the car, and, in answer to a question on cross-examination, "Isn't it a fact that you don't remember this occurrence at all?" says, "I did not see her and did not know anything at all about it."

Where the conductor gives the signal for a trolley car to start, in the presence of a passenger who is boarding the car, and before the passenger has had opportunity to get fully upon the car, and the passenger is thrown off and injured, there can be no doubt that the defendant's negligence is established.

It is the duty of the conductor to give every person desiring to board a standing car an opportunity to do so. He cannot fully perform that duty unless he can see the persons attempting to board the car, or in some way receive reliable information as to their movements. He has no right to conclude that because the car has been stopped for what he con-

siders sufficient time for all persons desiring to become passengers at that point that all such persons have safely boarded the car, and with that knowledge only start the car. He ought to ascertain before he starts the car that all persons so desiring have gotten upon the car, otherwise for injury that ensues to any passenger the defendant is guilty of negligence.

It is negligence in the conductor of a trolley car which has come to a stop at a street corner for the purpose of taking on passengers to start it until he has exercised due care to ascertain that all persons there waiting to take it have safely boarded the car.

The case of *Pitcher* v. *People's Railway Co., 54 Pa. St.* 560, affirmed in 174 *Id.* 402, has no application to this case, for there the person injured was attempting to board the car at the front platform under circumstances that did not charge the motorman or conductor with knowledge.

The duty involved in this case is not to use that high degree of care which is required of common carriers toward passengers, but only to exercise reasonable care. Whether the plaintiff, when injured, was a passenger of the defendant company, it is not, therefore, necessary to determine.

The question of the defendant's negligence was for the jury, and the evidence was sufficient for the finding of such negligence as would make the defendant liable.

One of the reasons assigned for the direction of a verdict has reference to the physical condition of the plaintiff. She produced testimony that it was the result of the accident; the defendant insisted, in its testimony, that it existed in the same condition before the accident. This was purely a question of fact for determination by the jury. It affords no ground for error.

We find no error in the refusal to nonsuit or to direct a verdict, and the judgment below is affirmed.